This morning is URSA Operating Company against Airport Land Partners. Mr. Barton, whenever you're ready. Thank you. May it please the court, I'm George Barton. I'm arguing on behalf of the appellants who we have referred to in our appellate briefs as the royalty claimants, and I will do so also today. I would ask permission to reserve four minutes for rebuttal. Right. I'd like to turn to the first issue, which is whether the bankruptcy court erred in determining that the royalty claimants do not have a property interest in the oil and gas proceeds that were received by URSA on its sale of the natural gas products, and address that specifically. And to start off with, it's an issue, as we've explained in our brief, of Colorado substantive law. And we've cited to the Supreme Court of Colorado decisions that specifically do recognize that lessors under an oil and gas lease do have a property interest in their respective share of the proceeds received by the oil and gas operator on the sale of natural gas products Is that you prevail on your argument on that question, just on common law without help of the statute? That is correct. Can you? I said, can you? Yes. Absolutely. And I specifically refer to the Simpson decision, which we cited to in our brief, which specifically holds that the reservation of a fractional interest in royalties is an interest in real estate. Specific language from that decision. Second part of that decision, a royalty interest is an interest in the proceeds derived from the minerals which a lessee has developed and produced. It's very clear-cut. I'm not aware of any decision that's contradicted that or overruled that. It's a 1956 case, and it's really consistent with the whole concept that under Colorado law, a lessor has a real property interest in his share of the natural gas proceeds. So, Mr. Borton, I see that you have cited those things in your brief to this court, but you didn't cite them to the bankruptcy court. You didn't cite those authorities, and you didn't cite them to the district court. So why should we not find your arguments forfeited? Now, we did cite the Simpson case in our arguments to both the bankruptcy court and the district court case in our briefs. We did. Okay. The Simpson case. All right. I'll have to look back at that, but you certainly didn't cite the statute that codified what ... No, and that certainly is true, Your Honor, but that is, as the decision in Keller Cattle versus Allison confirmed, that statute did not change the law in Colorado. That's a Colorado Court of Appeals decision. We cited it in our briefs to this court, specifically holds that the statute did not change the preexisting law in Colorado. It was actually a statute that applies only to leases that were enacted after 1991. So what we relied on were the Colorado Supreme Court decisions, which preceded the enactment of the statute, and which the Court of Appeals decision in Keller Cattle specifically held that did not change the law in Colorado. So we relied on the Simpson case. We also cited to the Haggard case, as it applies to overriding royalties. We also cited to ... What year was the Keller case decided? Well, Keller would have been decided after the statute was enacted. I don't remember the exact year. I can certainly tell you that, but it was decided after the statute was enacted in 1991. But, I mean, the Supreme Court of Colorado Authority, which has not been contradicted by ... It was not referred to by the Bankruptcy Court, that's true, but it's not been contradicted, specifically holds that royalty owners do have a property interest in the proceeds that are derived from the sale of gas from their percentage interest in those proceeds. And so, effectively, what's happened in this case is that a very, very substantial part of the proceeds which belong and are the property of the royalty owners have been withheld, were withheld by IHRSA, so that in many instances, the royalty owners only received 50 percent of what their true ownership proceeds were that they should have received. Okay. Mr. Barton, assuming you have a property interest, I'm interested on the question of the constructive trust which you asked to be imposed. I'm interested on that as to whether or not we determine your entitlement to a constructive trust under Colorado law or under federal law. Could you address that? Yes. I think we addressed that in our brief, Your Honor, and we cited to the cases, specifically in our brief, which hold that the determination of whether a constructive remedy interest applies, that also is subject to determination by Colorado Substantive Law. We cited to cases, multiple cases that have recognized that, that are circuit decisions. I believe decisions of this Court as well, and we address that specifically in our opening brief. But doesn't Colorado Substantive Law, let's focus on that a second, if we're to apply Colorado Substantive Law, doesn't Colorado Substantive Law talk about unjust enrichment? It talks about several things if you look at the applicable Supreme Court of Colorado decisions. Constructive trust is an equitable device used to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs. And then it specifically holds in both the Mancuso case and certainly in the Page versus Clark case that it can apply to any property which in equity and good conscience does not belong to the constructive trustee. So, let me sort of get, I think that you're getting to the heart of this, Your Honor, because if you look at what the Mancuso case says about this whole subject, because it's, you know, that's the, one of the two primary cases, the Supreme Court of Colorado case that talks about this constructive trust remedy. It specifically says, in general, a constructive trust is imposed because the person holding the title of the property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property. And then the emphasis after that is the doctrine of constructive trust is extremely flexible. So it's an either or concept in that very sentence. You know, it's not limited just to a specific, well, you've got to qualify under an unjust enrichment, you know, the elements of that where you might arguably have a problem because you also have a breach of contract remedy. It says if you profit by a wrong, then the constructive trust remedy should be applied. And the same sort of language is in the other Supreme Court decision that we've cited, Page v. Clark, which, you know, also recognizes that a constructive trust is a formula through which the conscience of equity finds expression when property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. It further goes on to say that, you know, we've been referred to no decision of this nature because of a doctrinaire adherence to form. Rather, the doctrine of resulting in constructive trust has proven to be extremely flexible. But the debtors cite to a case, I think, Lewis v. Lewis, that talks about the necessity of showing unjust enrichment. I think that Lewis v. Lewis is a unjust enrichment case. I don't believe that it says that there is a necessity of showing unjust enrichment in order to be entitled to a constructive remedy, constructive trust remedy, excuse me. I don't think that's part of it. I think these cases remain good law. I think Page v. Clark remains good law. I think that Mancuso remains good law. But what if we decided to, this question of a constructive trust needs to be decided under Federal law? I think we cited to, it's the Columbia Gas case and talked about Does it help you or hurt you? I think it helps us. Actually Columbia Gas actually has a stronger statement about constructive remedy or constructive trust remedy and our entitlement to it than perhaps even the Supreme Court of Colorado decisions. I would call them comparable. What about City of Farrell? City of Farrell, I'm not as, to be honest, I'm not as familiar with exactly what it says on that statement. We cited to the Columbia Gas statement, but I'm not aware of any statement in City of Farrell that would preclude us on the constructive trust remedy, Judge Fischer. I'm not. Now, I don't remember exactly what it says with respect to that particular issue, but again, I think under the applicable law, the constructive remedy, our position is, is governed by Colorado substantive law. So what happens if we agree with you and we send this case back? It doesn't appear to me that there's any money. Well now, we don't agree with the, obviously that issue was not decided by the bankruptcy judge, Judge Fischer. He did not take that issue up. He specifically said he wasn't addressing it. You'd have to show that, you'd have to trace the funds, would you not? There are issues about tracing that would have to be addressed. The record has not been developed. We informed the bankruptcy judge that we believe there would need to be discovery on that issue. That was really not, that was clearly not the focus of the hearing, and there was no findings made with respect to tracing in any respect by the bankruptcy judge. So it's an issue that would have to be addressed on remand, I agree with that. I am just about up with my time. Unless you have any questions, I'd like to reserve my remaining time for rebuttal. Thank you. May it please the Court, my name is Robert Valivas on behalf of Appali, URSA Operating Company. I'd like to split my time so that counsel for Appali, Wells Fargo, Ms. Alfonso can have four minutes. We believe you should affirm the bankruptcy court's decision because the bankruptcy court did exactly what this court's precedent in Sharon Steel, Columbia Gas, and Goldberg instructs, which is to require the parties seeking to apply a constructive trust to one, demonstrate that a trust relationship and its legal source exist, and two, identify and trace their trust property. And we believe on this record they have done neither, and I think you have an admission just now at the end of Appellant's argument that there is nothing in this record as to the second issue, which is identifying and tracing trust property. We had an agreed procedure in this case where, and in Appellant's opening brief on page 13, they say that that procedure was an appropriate procedure to resolve this question. We submitted evidence as part of that procedure that demonstrated that none of the property, none of the funds that the debtors were holding could be traced to any of the Appellant's alleged trust proceeds. They submitted no evidence in rebuttal to that. How could they until they take discovery? Well, they had an opportunity ahead of the hearing to take discovery. Nobody denied them that opportunity. We submitted a declaration. They could have asked us for discovery. They never served discovery. They never sought to take a deposition. In bankruptcy, it's very common that parties take discovery in advance of evidentiary hearings. They never moved to continue the hearing to allow them to do it. And then they came to the hearing having not established the second requirement under Columbia Gas, that no evidence to trace. They admitted today that there's no evidence in the record to trace. And the result of that, you can't come to a hearing supposed to put on your evidence, and then only at that hearing say, but, you know, I need discovery to be able to do it. Didn't the bankruptcy court essentially find that the royalty claims that they're attempting to make were not property, or were property of the estate? The bankruptcy court did do that in its March decision. Didn't that preclude even moving to the question of whether or not they were entitled to a constructive trust? Well, we had an evidentiary hearing before that where the parties were able to put on their evidence. So there was evidence in the record. And I agree with you that in the court's March decision, which was the first decision, the court didn't address this question. But in April, when we came in for a motion, which was effectively in part a motion for reconsideration and a motion on the stay, the bankruptcy court expressly said to the appellants, do I ascribe, and this is in their appendix, page 2661, do I ascribe significance to the court's conclusions that I found that you weren't entitled to it because normally you need to identify or trace to a particular race, which parties have largely agreed you really couldn't do. How do I deal with that? And in response, they said, I think that's an issue. And they went on to explain why they don't believe that tracing is required. But then in this court, they didn't, in their opening brief, they said the procedure that was put forward was an appropriate one. They didn't address this requirement under Columbia Gas at all in their opening brief. And then in their reply brief, they asked for you to send it back down so that there could be an opportunity for discovery, which, of course, they did have an opportunity for, and they chose not to avail themselves of it. Does Columbia Gas control this constructive trust issue? Your Honor, I believe that, and we briefed both issues, we believe it's an issue of federal law, but we don't think it matters because I think on the court questions here, federal law and state law are effectively the same. Under Colorado law, to establish a constructive trust, you need to establish, it's not a requirement that there be a confidential relationship, but just about every one of the cases involved some type of confidential relationship, which isn't at issue here. Columbia Gas adds the conduit wrinkle, which seems to help them. Yes. Well, it does, except here there's nothing which actually indicates that we in the contract, that IHRSA was holding property on behalf of and was intending to do it as a conduit. So there wasn't segregation. There was no indication that IHRSA was actually acting as a trustee. And this is important for a number of reasons, but the appellants themselves didn't even believe that IHRSA was acting as a trustee because they came to the bankruptcy court in the first instance and filed a secured claim. They didn't say, you're holding my property. They said, I'm a secured claimant, just like Wells Fargo is. And it wasn't until December 31st, after the extraction decision came out, that they came in and said, wait a second, we're actually not secured claimants. You're really holding our property. And then they came up with this argument. What the cases on constructive trust all suggest is that the parties needed to know from the outset of their relationship that this property was being held as a constructive trustee, that someone is holding property on behalf of another. And I will submit to you that there's nothing in this record that indicates that until December 31st, anyone had a notion that IHRSA was acting as a constructive trustee. Judge Fischer, on your questions about unjust enrichment, I was surprised to hear Mr. Burton and the appellants argue that they might have a problem under a contract case if unjust enrichment was the standard. Because I had understood almost their entire argument to be that under Colorado law, we get to fall back on unjust enrichment. Because under Colorado law, what the cases say is they ask, is there fraud or duress? And they concede that there isn't. They ask, is there a confidential relationship? They concede that there isn't. But they say, you don't have to require that. You could also apply a constructive trust when there's unjust enrichment. The problem with that, as I think they recognize, is that under Colorado law, you can't get unjust enrichment when you have a contract remedy. And here, the only remedy they are seeking is a contract remedy. They cite repeatedly to the Lowry v. Palm case. I think if you focus on that case, it fully supports our position. Because in that case, the court, and it dealt with a very specific asset that I think very clearly was being held throughout the party's relationship. On behalf, by one party on behalf of another, it dealt with a fishing permit through the sale of a business. And the court looked at the contract in that case and said very expressly that the contract in that case, and this is on page 563 of that decision, it says, the party's agreement contemplated that the permit would be held in trust and used exclusively in the business's name and for its benefit. And so in that case, you had the very thing that Judge Shannon in this case was looking for. Is there something in the contract which indicates that the property was being held in your name and for your benefit? And Judge Shannon said, there's nothing here. And when Lowry v. Palm says we can find situations where unjust enrichment would apply even when a party has a contract, what the court says is that the contract in that case was silent about what would happen if the person who was holding the permit no longer worked at the business. And so it had the unjust enrichment remedy came to fill a gap where the contract remedy was otherwise going to fail, which is exactly what the Colorado Supreme Court in the Pulte Holmes case that we cited states are the very limited situations where contract claimants, which is all they are here, can have an unjust enrichment remedy. So it seems like Mr. Barden effectively conceded that that's a problem for them here, and I think that's their only argument for a constructive trust under Colorado law, at least from the briefing that we see. So in the situation where 47 contract claimants could come into court having never asserted until the last minute that the debtor was holding their property, the only admit that there's no confidential relationship, admit that there's no fraud, come in and say this is such a flexible remedy that it has to apply for unjust enrichment, and that unjust enrichment applies to give a contract creditor a right to jump into a bankruptcy and grab assets out of the estate before they can go to any other creditors, because that's effectively what the constructive trust is doing. Do you say the parties needed to have manifested an intent to create a trust? Well, I'm not saying that it is an express trust, which manifesting the intent would require. But what the Lowry v. Palm case says is that they manifested an intent that someone was holding property on behalf of another. That's what Lowry v. Palm suggests is the standard under Colorado law. They don't do that? These leases don't do that for the royalty? They don't do that. They establish a contractual obligation to pay a percentage of dollars that come in. It doesn't say we're going to hold this money on your behalf. It doesn't say we're going to put it into a segregated account. And it doesn't do any of the things that a party otherwise would do. And, again, they didn't ever assert that we were holding their property. For years and years and years, they only asserted contract claims. And so we believe for that reason and for the inability to meet the second standard and admit that there's nothing in the record to meet the second standard, you should affirm. You talk about, you know, what was raised and when. But before the district court, it seems to me that the district court came down in your favor on the basis that the court said, but the court agrees with the wind-down debtor that Simpson does not support the royalty claimant's contention that they have a reserved ownership interest in the sales proceeds, nor do any of the other cases cited by the royalty claimants. It seems that that was the hook upon which the district court, at least, made their determination that there was not a property interest that they were entitled to have a constructive trust for. I agree with you that Simpson was cited both in the bankruptcy court and the district court. The other statutory hook that was used below that the bankruptcy court rejected and was the primary argument that they raised was under the UCC 1-203. They came into the bankruptcy court and said that is what establishes it. I understand that. I understand that. But at least as to what the district court had to say, they hung their hat on the fact that there was no ownership interest to even move to the next step of a constructive trust. And we don't believe that Simpson establishes that there is an ownership interest in the property. So there's nothing in Simpson that suggests that. There's nothing in Simpson that suggests that the debtor in this case was holding assets on behalf of somebody else. Simpson's so I agree that Simpson clearly was raised below. Simpson and, yes, Mr. Barton and you know, I agree that it was raised below. It holds that a conveyance of a partial interest in minerals in perpetuity is an interest in the real property. How is that relevant to this case? Well, we don't think it is relevant to this case. A conveyance of an interest in real property, a conveyance of an interest in the proceeds is an interest in real property means that when you sell your interest, which is not what's at issue here, you have to record it. You have to comply with the statute of frauds. You have to do a variety of things under Colorado law. That's a pretty non-controversial proposition. But what that case doesn't say is that the dollars that when we extract oil and gas and we take it and we now own it and are selling it to somebody else, that through that entire process, both the oil and gas and the dollars are somehow owned by somebody else and that we are simply holding it on their behalf in trust. There's nothing in Simpson that suggests that at all. It's talking about when you are conveying your interest to somebody else. But you don't believe the royalty claimants have an equitable interest in those proceeds? We believe they have a contractual claim against the debtor. And they're equitable interest under Colorado law? You do not believe that they have an equitable interest under Colorado law? We don't believe that they we believe their interest is a contractual one to the proceeds. Under Colorado law. And just back to Simpson for a moment. What is the difference between a property interest in minerals and a property interest in mineral royalties? The property interest in the minerals can be, you can enter into a contract where somebody can then, a lease in this situation where somebody can extract the minerals and can own the minerals and can sell them and then owe you under that contract a percentage of the payment which is called a royalty at the end of the day. But again, there's nothing in Simpson that suggests that the party that has entered into a lease is now holding both the minerals that they're extracting or the proceeds from those minerals on behalf of somebody else to pay them. It's a contractual interest. And I'll note here that we paid what we, there's really no doubt that we paid what we believed was owed. And that exact same amount was paid to all of the other alleged creditors, all the other creditors in this case who had similar, who were similarly situated to these 47 appellants. These appellants are the only ones that came in and said we actually have a property interest and that we get to go to the front of the line in front of everybody else. Putting Simpson aside, doesn't the statute create that property interest? Well, the statute was raised below. We don't think that then the Keller case wasn't cited below. The statute that they argued below was the UCC. Okay, but what about the statute that has been raised? Okay. The statute that has been raised talks about a right to the proceeds is what a royalty interest creates, and it doesn't create other things. So the statute goes on and it talks about all of the other rights that a royalty interest doesn't allow a party to have. So a royalty interest allows, is a right to receive proceeds. We agree with that. The lease, it was converted into a lease here, which also gave them a right to proceeds. But it doesn't say that those proceeds are property interests that are traced throughout when we have extracted the minerals and have sold them downstream. Doesn't it say that such a conveyance creates a real property interest, which gives the That is what a royalty is, and this is a lease. And it calls it a property interest. It calls it a property interest. But that doesn't mean that through the time that we have money, that that money is being held on behalf of somebody else. Let's talk about forfeiture for a second. Is it sufficient if a party says under Colorado law and under these Supreme Court decisions articulating the rule where we have a property interest and they don't cite the statute, but then later they do cite the statute that looks like it codifies the common law rule. Is that a new argument or is it just new support for an argument that was previously made? I don't think that, first of all, I don't think in this case that the statute codifies the rule that's set forth in Simpson or Haggad and the other cases, and Garment. None of those cases say what that statute says. But the statute explicitly codifies the common law. It says this isn't new. I agree with that, but I think, Judge, as I understood Judge Porter's question, it was, was this properly raised below, and I would suggest that simply citing to Simpson and Garment and Haggad and then citing to a different statute which you say gives you the right for this to be a trust, which was the UCC. Okay, but they're essentially arguing that Colorado common law, put it that way, gives them this property right. And then if the statute comes along and codifies that common law and now they cite the statute, is that really a new argument, or is it just different support for the same argument, additional support for the same argument? So if, in fact, it is exactly the same as the Simpson-Haggad-Garment, which we disagree with, I would agree with you that it is further support for the same position. I don't agree with the proposition, and so I do believe that this argument was waived. So you don't agree that the statute codified common law? That's not what I'm saying. What I'm saying is that the cases that they cited below. Where would we find the common law that the statute codified? What's talked about in the Keller Cattle case that they also didn't cite below. But that interpreted the statute, didn't it? Correct. Well, I'm talking about what case was the statute built upon. Your Honor, I don't sit here right now and know the answer to that. Okay. All right. Okay. Okay. That's probably a question better posed to Mr. Barton. He will have an opportunity to address that. Mr. Barton. He still has counsel for Wells Fargo. Oh, sorry. I'm sorry. Not yet. I forgot. They're dividing their argument. Oh, I'm sorry. I apologize. May it please the Court. My name is Anna Alfonso. I'm at Wilkie Far and Gallagher. I represent Wells Fargo Bank, which is a secured lender and an administrative agent for the secured lenders to IHRSA. I'm standing to make one point that we raised below that is very important from the bank's standpoint, both in this case and many others, if the Court will indulge me. The point is the last point that was raised in the response brief of the appellees and was responded to by the appellant in the final brief. The issue is that from the bank's standpoint, this Court can and should affirm on the basis that the bankruptcy court's dip financing order barred the appellants from asserting property interest in constructive trust theories after November 17, 2020, at least to the extent they would subordinate the lender's liens. Now, this wasn't given a lot of airtime below, and we didn't argue before the district court, because, frankly, the other issues are much more fascinating to untangle. And as Mr. Barton pointed out in his brief, no one cited any case law for this proposition. But this is commonplace in debtor cases where secured lenders are faced with the option of either being uncooperative or consenting to the use of their cash and, in this case and many others, also lending new dollars to fund a bankruptcy case so that there can be a fair process with rules of the road set forth in the dip financing order that give the lender some protection against years and years of fighting with creditors that are very disappointed in the outcome of the proceeding. So I would ask the court to indulge me because we did not focus on the dip order terms in the brief. There's a paraphrasing, but I wanted to just offer some sites. You never filed a brief on this, did you? We filed a jointer, and we filed an objection below, and I can give you the site to that as well. It's all in the record. But you didn't bring that issue before us, even though you intervened. It is in the brief we joined. Which brief? The response brief of the appellee. It's the last argument. It is? Yes. Are you going to unpack the argument for us now? Yes, I am. I apologize. The dip order specifically provides, and I'll give you the jump site, but the case, it's on page 6 of the dip order is where it starts. It has stipulations and admissions of the debtors. This may be familiar if you've had to review dip orders in the past because these happen very frequently. In this case and in others, the debtors stipulate and admit to a variety of things, including in this case, which is in Roman at 2 of paragraph D on page 7 of the dip order, that the secured lenders had valid first priority perfected liens on substantially all of the debtors' assets that they were given in exchange for reasonably equivalent value and fair consideration, and they're not subject to subordination. There's one exception to the binding nature of those admissions, and that is a challenge period. In the dip order, that will appear on page 39. It is paragraph 6, and it sets forth a very specific process and deadline by which parties in interest that wish to challenge the scope and validity of the secured lenders' interests in property of the estates to raise a challenge. That deadline was 75 days after the petition date, November 17, 2020, about a month and a half before the appellants came to the court and asked for the imposition of a constructive trust and argued that they had a property interest in the monies that were in the estate. At that point in time, the record below is undisputed. As Mr. Belivas pointed out, there were declarations from Mr. James Chronister that are in the record stating that all of the cash at that point consisted of the sale proceeds from the sale of the debtors' leasehold interests, substantially all of the debtors' assets, to a third party. That sale happened as a result of a Bankruptcy 363 process that was funded with dip financing loans and cash collateral that the lenders consented to the use of. The result, unfortunately for all of us, was that the net sale proceeds were about on the order of $40 million after all was said and done. And the banks were owed more than $210 million on the first lien, plus another $50 million on a second lien basis. At that point, when all that was left in the estate was cash proceeds from leasehold interests, not mineral interests, the appellants still owned their mineral interests. There was no cash proceeds from any sale of production at that point. It was all proceeds from the sale of the collateral. And that is the corpus on which the appellants are seeking to impose a constructive trust on the basis that they have a property interest. Now, if the Court will look at the provisions in paragraph 6 of the dip order, it is very clear that if parties don't raise their challenges by the challenge deadline, then those are waived and the stipulations and admissions are binding on all parties for all purposes in the cases. We submit that it would be very helpful if the Court would please look at that order and consider whether we even need to address all of these other issues, because the time had passed, the liens on the leasehold interest and the proceeds from the sale of those leasehold interests clearly and indisputably were valid. And therefore, any attack on the basis of a property interest, which is what's happening here, is an effort to subordinate the lender's first priority position. That's all I came to say, Your Honor. If you have any questions, I would be glad to answer them. Okay. Thank you very much. Thank you. Mr. Bartlett. Thank you, Your Honor. Let me respond very quickly to the argument that was just made, because there were no findings made by the Bankruptcy Court, by the District Court, in any way, shape, or form related to this issue. We addressed four specific reasons why that matter should not even be considered by the Court in this appeal, not the least of which is that neither the Bankruptcy Court nor the District Court made any findings with respect to this whole issue of the DIP financing facility and the challenge proceeding. But finally, just so it's clear, as IHRSA acknowledged, the DIP financing facility was secured by first priority liens on all of IHRSA's assets. IHRSA's assets. Such secured interests do not extend to assets which are not property versus bankruptcy estate. Therefore, the royalty claimants, as claimants who are claiming that the monies withheld from them are not property versus bankruptcy estate, clearly had no obligation to make a challenge proceeding. There's no case law they cited that said that they did. There were no findings made on it. Neither IHRSA nor Wells Fargo cited any case law on that issue before the Bankruptcy Court. And we did assert our claims in 17 different adversary compliance. We asserted our position, which we filed in the Bankruptcy Court. So I just wanted to clear that up. I thought I heard Ms. Alfonso say, however, that the corpus you're trying to reach now is not cash from your client's royalty, the royalties that they have a property interest in, but it's from the sale of some other assets. I'm not sure I got that right, but do you follow? Yes, I do, Judge Porter. But what I tell you is the whole issue about what assets that we have available to claim from if we prevail in this appeal was really never addressed by the Bankruptcy Court either. It wasn't decided. And I respectfully disagree with the characterization of what was the purpose of the underlying hearing. I think that's described by Judge Shannon, his bankruptcy order. I don't agree at all that we were required to address or prove up the tracing issue. And we told the Bankruptcy Court that we needed discovery on this issue, and no discovery was ever conducted. And it was an issue that was never addressed by the Bankruptcy Court. The Bankruptcy Court expressly stated that he was not reaching that issue. You cited Simpson, and I read an excerpt from the district court opinion on Simpson, and counsel indicated that Simpson doesn't stand for what you said it stands for. What's your response to that? My response to that is to just read what it says, Judge Fisher. It says a reservation of a fractional interest in royalties is an interest in real estate. And, in fact, the debtors in their first day motions acknowledge that. And our position is consistent with the statements that they made in their first day motions, by the way. But it goes on to say, if a grantor conveys a fee-simple title in the land reserving rent, rent is royalty, he himself has a fee-simple estate in the rent, which essentially means that the lessor has a fee-simple interest in the rent, the royalty. It goes on to say, and most importantly, perhaps, an interest in royalty is an interest in the proceeds derived from the minerals which a lessee has located, developed, and produced. I don't think you could have it any clearer than that, and that is the definitive Supreme Court of Colorado decision on this issue, Judge Fisher. They didn't cite any other decisions. They didn't cite to another Colorado Supreme Court decision or any other Colorado appellate decision. Does the statute that you cited codify that rule or some different rule? No, it codifies Simpson. It codifies the whole rule that a lessor has a property interest, obviously has an ownership interest in his percentage share of the minerals, and that includes an ownership interest in the proceeds that are derived from the sale of the oil and gas products that are subject to the lease. It's very simple, really, and it's confirmed by their own first-day statements, their own first-day statements. So, and I just, I know my time is up, but I would tell you that if you read the constructive trust decision in Lawry v. Palm, you read Mancuso, you read Page v. Clark, all these cases we cited to, there's not one statement in any of those cases that suggests that the underlying lease has to have a statement in it that the parties are in a trust relationship or has to have a statement in it that, you know, the oil and gas producer is holding the proceeds, you know, for the benefit of the lessor. It's just absolutely not correct. If you're so certain about your position, how come your original claim was as a secured creditor? You know, Judge Fischer, I think initially we sort of analyzed it in that, and then we further researched it, and to be honest with you, and realized that that was really not the correct way to go about it, that the correct way to go about it was that the issue was not the property of the estate. And when we entered into the stipulation with respect to the hearing, it was fully understood that that's the position we were taking and that we were not being prejudiced, you know, that our position that the royalty owner share of this was, you know, not property versus bankruptcy estate, that that was fully teed up for the hearing, that the fact that we had, you know, amended our position on that would not, we would not be prejudiced by that amendment in any way for purposes of that hearing. That was part of the stipulation. Thank you. Anything else? No, thank you. I think it would be helpful for us to have the transcript of this argument. We'll have the parties split the cost. Okay. Thank you. Please rise.